**Alvaro Gerardo ORTIZ; Alma Jeaneth Lopez; Nelson G. Ortiz; Cristian Bladimir Ortiz; Jeaneth Esmeralda Ortiz, Petitioners,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 97–71022.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 13, 1999.

Filed June 8, 1999.

---

**1150**

Garish Sarin, Los Angeles, California, for the petitioners.

James A. Hunolt, United States Department of Justice, Office of Immigration Litigation, Washington, D.C., for the respondent.

Before: BOOCHEVER, O'SCANNLAIN, and TASHIMA, Circuit Judges.

BOOCHEVER, Circuit Judge:

Alvaro Gerardo Ortiz, his wife and three children (the "Ortizes") are natives and citizens of Guatemala. They petition for review of the decision of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") decision denying their application for asylum and withholding of deportation under sections 208(a) and 243(h) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(a), 1253(h). We have jurisdiction pursuant to 8 U.S.C. § 1105a,[1] and we deny the petition. We stay the mandate for 90 days, however, to allow the Ortizes an opportunity to move the BIA to reopen to consider any claims for relief the Ortizes may have under the Nicaraguan Adjustment and Central American Relief Act of 1997 and the United Nations Convention Against Torture.

## BACKGROUND

In April 1995 the Ortizes were served with an Order to Show Cause why they should not be deported as aliens who had entered the United States without inspection by an immigration officer. On May 16, 1995, the Ortizes filed an application for political asylum. At their first immigration hearing on July 5, 1995, the Ortizes admitted the allegations in the OSC and conceded their deportability, but requested withholding of deportation and asylum, or in the alternative, voluntary departure. At the close of the hearing, the Ortizes' counsel stated that he had only recently been retained, and was not sure whether he was going to "stay with the same asylum application."

The immigration judge held a final hearing on the Ortizes' asylum application on July 24, 1995. After the Ortizes' counsel told the IJ that there was an error in the asylum application, the IJ permitted coun-

---

1. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") repealed 8 U.S.C. § 1105a and replaced it with a new judicial review provision codified at 8 U.S.C. § 1252. *See* IIRIRA § 306(c)(1), Pub.L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996), *as amended* by Act of Oct. 11, 1996, Pub.L. No. 104–302, 110 Stat. 3656. Still, because the new review provision does not apply to petitioners whose deportation proceedings commenced before April 1, 1997, we continue to have jurisdiction over the instant petition under 8 U.S.C. § 1105a. *See* IIRIRA § 309(c)(1).

sel to make any necessary corrections. After a short recess, in response to the IJ's questioning, Mr. Ortiz stated that he was neither familiar with the contents of the application nor had the application been read to him. The IJ then allowed Mr. Ortiz's attorney and an interpreter to go over the application. The IJ noted that counsel had crossed out on the application the answers to questions 18, 19, and 20, which asked, respectively, "Why are you seeking asylum," "What do you think would happen to you if you returned to your home country," and "Have you or any member of your family ever belonged to or been associated with any organizations or groups in your home country." [2] In response to questioning from the IJ, Mr. Ortiz stated that he crossed out those answers because they were untrue. After the IJ noted his concern with Mr. Ortiz's truthfulness, Mr. Ortiz responded that the application had been prepared by a notary, and that when he signed the application, it had been blank.

The Ortizes' counsel and the IJ then began to question Mr. Ortiz to establish the basis of his asylum claim. Mr. Ortiz stated that he "possibly" felt that his life would be threatened if he went back to Guatemala because the police had previously come to his house on several occasions and beat him. In one incident in 1985, they arrested him on theft charges for stealing a television. He was held for approximately a month and a half before trial, but was released ten days after the trial after his father produced the receipt for the television. Soon thereafter, Mr. Ortiz testified that he and two friends were detained and strip-searched by the police.

In response to his counsel's questions, Mr. Ortiz then stated that he had spent three years, between 1986 and 1989, in

prison for a drug trafficking conviction, but he denied ever trafficking in drugs. Mr. Ortiz stated that he had no other convictions. Mr. Ortiz's counsel asked no more questions, and stated that he had nothing further with respect to Mr. Ortiz. The IJ then asked Mr. Ortiz about his conviction: "And you were convicted of ... trafficking in drugs? Had you been convicted and that's why you were serving three years in jail?" Mr. Ortiz answered, "Yes, sir." Later, counsel for the INS asked Mr. Ortiz why he thought his life would be in danger if he returned to Guatemala, but the IJ cut off the question because he thought the question was unnecessary.

Later in the hearing, in response to questions from the IJ, Mr. Ortiz's wife recounted that she had seen the police shoot someone at the cinema where she worked. All of the Ortizes stated that, if given an opportunity to leave the United States voluntarily, they would do so. The IJ then rendered an oral decision granting all of the Ortizes except for Mr. Ortiz voluntary departure. The Ortizes appealed to the BIA.

On August 27, 1997, the BIA dismissed most of the Ortizes' appeal. The BIA found that Mr. Ortiz had failed to establish that he was eligible for asylum because he admitted that he had been convicted of an aggravated felony, and because he had failed to demonstrate past persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. Further, because Mr. Ortiz had failed to establish a claim for asylum, he necessarily also did not demonstrate a claim for withholding of deportation, which has a higher burden of proof. The BIA did, however, reverse the IJ and granted Mr. Ortiz the right of voluntary

**2.** Mr. Ortiz also crossed out responses to Questions 21, 22 and 33, which asked, respectively, "Have you or any member of your family, ever been mistreated/threatened by the authorities of your home country or by a group(s) controlled by the government, or by groups(s) which the government of your home country is unable or unwilling to control," "Have you or any member of your family, ever been arrested, detained, interrogated, convicted and sentenced, imprisoned in your country, any other country, or in the U.S.," and "Please provide any additional statement relevant to your case."

departure. Finally, the BIA found that the performance of the Ortizes' counsel was not so deficient to be a violation of due process because the Ortizes failed to demonstrate any prejudice. The Ortizes filed this timely petition for review on September 11, 1997.

## DISCUSSION

I. *The Nicaraguan Adjustment and Central American Relief Act of 1997 and United Nations Convention Against Torture*

■ The Ortizes seek to have their case remanded back to the BIA with orders to reopen so that they can apply for suspension of deportation under the Nicaraguan Adjustment and Central American Relief Act of 1997 ("NACARA"), Pub.L. No. 105–100, 111 Stat. 2193 (Nov. 19, 1997), *as amended* by Act of Dec. 2, 1997, Pub.L. No. 105–139, 111 Stat. 2644. Section 203 of the NACARA affords certain Guatemalans (among others) applying for a suspension of deportation, the benefit of pre-IIRIRA rules for calculating their duration of physical presence in the United States. The Ortizes arrived in the United States before October 1, 1990, and may be eligible for relief under the NACARA.[3] *See Aguilar–Escobar v. INS*, 136 F.3d 1240, 1241 (9th Cir.1998). The INS, however, argues that this court should deny the Ortizes' request for remand because they have an unexhausted administrative remedy in the form of a motion to the BIA to reopen their deportation proceeding. We agree.

■ Because the Ortizes did not raise the issue of their eligibility for relief under the NACARA before the BIA, we lack jurisdiction to consider that claim. *See Rashtabadi v. INS*, 23 F.3d 1562, 1567 (9th

Cir.1994). The Ortizes are free, however, to raise this issue before the BIA in the form of a motion to reopen. *See id.* (stating that although the alien could not raise an issue for the first time on appeal from the BIA, the alien was free to move the BIA to reopen).

■ This court has held that "[w]hen an alien discovers new information after the BIA has finalized deportation proceedings, the proper procedure is for the alien to move the BIA to reopen proceedings, not to petition this Court to compel the BIA to reopen." *Olivar v. I.N.S.*, 967 F.2d 1381, 1382 (9th Cir.1992); *see also Ramirez–Gonzalez v. I.N.S.*, 695 F.2d 1208, 1213–14 (9th Cir.1983). A change in eligibility for relief under a new statute qualifies as new information. *See Olivar*, 967 F.2d at 1383. Thus, if the Ortizes are entitled to apply for a suspension of deportation under the NACARA, "[that statute] should first be brought to the attention of the BIA so that it can address [the Ortizes'] claim under its normal procedures." *Id.* We thus deny the Ortizes' request to remand to the BIA with orders to reopen, but we will stay our mandate for a period of 90 days to allow the Ortizes an opportunity to file a motion to reopen with the BIA to consider their eligibility for relief under the NACARA. As the BIA has not yet had an opportunity to consider this issue, we express no opinion on the Ortizes eligibility for relief under the NACARA.

■ At oral argument, counsel for the Ortizes argued for the first time that the Ortizes may also be eligible for relief under the United Nations Convention Against Torture ("Convention").[4] Whether the Ortizes are entitled to relief under the Convention, however, is also an issue

---

3. Under IIRIRA § 309(c)(5)(C)(i)(I)(bb), *as amended* by NACARA, Pub.L. No. 105–100, 111 Stat. 2193, "a Guatemalan national who first entered the United States on before October 1, 1990," among other requirements, may be eligible for relief from the transitional rules with regard to suspension of deportation. We note that the U.S. Department of Justice is still in the process of implementing new immigration guidelines applicable to

Guatemalans. *See* 64 Fed.Reg. 27856 (May 21, 1999) (setting forth interim rule with request for comments implementing section 203 of the NACARA).

4. The Immigration and Naturalization Service only recently issued an interim rule, after briefing was completed, to establish procedures for raising a claim under the Convention for protection from torture. *See* 64 Fed.

that must first be brought to the attention of the BIA. Accordingly, our 90–day stay of the mandate will also afford the Ortizes an opportunity to move the BIA to reopen to consider the applicability of the Convention.

Although the Ortizes may be entitled to relief under the NACARA or the Convention, we may still reach the merits of the Ortizes' remaining claims. *See Aguilar–Escobar,* 136 F.3d at 1241 (reaching the merits of petitioner's asylum claim despite the possibility of relief under the NACARA).

## II. *Due Process*

■ At the deportation hearing, Mr. Ortiz testified that while in Guatemala, he had been arrested and harassed by the police, and had spent three years in a Guatemalan jail after he was convicted of drug trafficking. Mr. Ortiz, however, denied trafficking in drugs. The attorney for the Ortizes did not ask Mr. Ortiz any questions regarding why he had been arrested or harassed by the Guatemalan police, or why he had been convicted of drug trafficking if he did not commit the crime. On appeal, the Ortizes argue that they were denied due process at their deportation hearing because their counsel failed to elicit testimony that may have established their claim for political asylum. The BIA rejected this argument because the Ortizes did not demonstrate that they were prejudiced by counsel's performance.

■ "Ineffective assistance of counsel in a deportation proceeding is a denial of due process under the Fifth Amendment if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Lopez v. I.N.S.,* 775 F.2d 1015, 1017 (9th Cir.1985). Due process challenges to deportation proceedings require a showing of prejudice to succeed. *See Getachew v. I.N.S.,* 25 F.3d 841, 845 (9th Cir.1994). Prejudice is found when the performance of counsel was so inadequate that it may have affected the outcome of the proceedings. *See Barraza Rivera v. I.N.S.,* 913 F.2d 1443, 1448 (9th Cir.1990). We agree with the BIA that the Ortizes have failed to demonstrate prejudice.

The Ortizes argue that under the present record, it is unclear whether the Guatemalan authorities were "persecuting" Mr. Ortiz on account of his "race, religion, nationality, membership in a particular social group, or political opinion," 8 U.S.C. § 1101(a)(42), and thus ask this court to remand to the IJ to hold a hearing so that they can explain why they are eligible for asylum. They do not, however, explain to this court what evidence they would present on remand to support their asylum claim. They simply maintain that they *could* demonstrate a valid asylum claim if their case were remanded. This court was presented with a very similar situation in *Mohsseni Behbahani v. I.N.S.,* 796 F.2d 249, 251 (9th Cir.1986), where the petitioner also failed to "describe the evidence that [his counsel] incompetently failed to introduce." The *Mohsseni Behbahani* court held that "[w]ithout such documentation, we can find no prejudice. Rather, we must presume that [his counsel] simply did not possess any evidence refuting deportability." *Id.* Thus, absent any evidence from the Ortizes that they are eligible for asylum, this court must presume that there is none.[5] *See id.; see also Vides–*

---

Reg. 8478 (Feb. 19, 1999) (amending 8 C.F.R. Parts 3, 103, 208, 235, 238, 240, 241, 253, 507) (corrections at 64 Fed.Reg. 9435 (February 26, 1999) and 13881 (March 23, 1999)).

**5.** When asked at oral argument why the Ortizes failed to submit any evidence, such as affidavits or declarations, in their appeal to this court to support their argument that they were prejudiced, counsel for the Ortizes responded that they could not do so because the

record from the BIA was closed. Counsel's response, however, is insufficient for two reasons. First, even if they were barred from doing so on appeal to this court, the Ortizes were free to submit affidavits or declarations in their appeal to the BIA, but failed to do so. Second, such evidence would only support a *showing* by the Ortizes that they suffered prejudice, not that they actually did. The Ortizes were free to explain to this court what evidence they were prepared to offer in support

*Vides v. INS,* 783 F.2d 1463, 1470 (9th Cir.1986) (no prejudice from self-representation in part because petitioner "has not proffered any new evidence which he believes counsel would have discovered and properly presented at the hearing"). Because the Ortizes have failed to demonstrate that they suffered prejudice as a result of their counsel's performance, we affirm the BIA's finding that their counsel was not so ineffective that they were denied due process.[6]

### III. *Prior Drug Trafficking Conviction*

During the deportation hearing, Mr. Ortiz admitted that he had been convicted of drug trafficking in Guatemala in 1986, and had spent three years in a Guatemalan prison. The IJ found Mr. Ortiz to be an alien convicted of an aggravated felony, and the BIA relied in part on Mr. Ortiz's trafficking conviction in affirming the IJ's denial of Mr. Ortiz's application for political asylum. On appeal, the Ortizes argue that the IJ erred in finding that Mr. Ortiz had been convicted of an aggravated felony. Because Mr. Ortiz has failed to establish a claim for asylum, whether he is disqualified from that relief because of his conviction is not material to that issue. Still, because Mr. Ortiz and his family may be eligible for relief under the NACARA, and Mr. Ortiz's prior conviction may render him ineligible for a suspension of deportation under that statute, we reach the merits of this issue.[7]

The Ortizes' assertion that the IJ erred in finding that Mr. Ortiz had been convicted of an aggravated felony raises two separate issues: (1) whether Mr. Ortiz's oral admission in his testimony that he was convicted of drug trafficking was sufficient to support the IJ's finding that he was actually convicted of that crime; and (2) even assuming Mr. Ortiz had been convicted of drug trafficking, whether that conviction constitutes an "aggravated felony" under the applicable immigration laws.

We review for substantial evidence the BIA's factual findings underlying its determination that Mr. Ortiz is ineligible for political asylum. *See Sangha v. I.N.S.,* 103 F.3d 1482, 1487 (9th Cir.1997). We will reverse only if the record would compel a contrary conclusion. *See id.*

The BIA has repeatedly stated that an alien's own admissions that he was convicted of a crime may support a finding that the alien was actually convicted of that crime. *See Matter of Correa–Garces,* 20 I. & N. Dec. 451, 453–54, 1992 WL 195803 (BIA 1992) ("The conclusion that the person has not established good moral character may be based on that person's admissions at the deportation hearing that he pleaded guilty to and was convicted of the crime in question."); *Matter of Doural,* 18 I. & N. Dec. 37, 1981 WL 158815 (BIA 1981) ("Where there is reason to believe— by the alien's own admissions, as here, or otherwise—that there has been a conviction ... it is incumbent upon the applicant for admission to establish that he is not inadmissible...."); *Matter of Pritchard,* 16 I. & N. Dec. 340, 341–42, 1977 WL 39290 (BIA 1977) ("The respondent admitted that he pled guilty to and was found guilty of the unauthorized possession of marihuana by a British criminal court in 1974."). Mr. Ortiz twice stated in his testimony that he had been convicted of drug trafficking. Even though Mr. Ortiz denied trafficking in drugs, given Mr. Ortiz's admissions on the record, we cannot say that

---

of their asylum claim if remanded back to the BIA.

**6.** The Ortizes also argue that they were deprived of due process because their counsel crossed out incorrect answers in the Ortizes' original asylum application, but failed to prepare a new asylum application with new responses. This argument also fails because the Ortizes similarly do not allege in their brief to

this court what responses counsel should have supplied.

**7.** Section 203 of the NACARA provides that its provisions apply only to those aliens, "who have not been convicted at any time of an aggravated felony (as defined in section 101(a) of the Immigration and Nationality Act)."

the BIA's finding that Mr. Ortiz was convicted of drug trafficking is unsupported by substantial evidence. We hold that Mr. Ortiz's admissions during his deportation hearing that he had been convicted of drug trafficking sufficiently support the BIA's factual finding that Mr. Ortiz was actually convicted of that crime.

The second issue, whether Mr. Ortiz's 1986 drug trafficking conviction in Guatemala constitutes an "aggravated felony," is more complex, and requires us to untangle the different provisions governing the definition of "aggravated felony" and their respective effective dates. The term "aggravated felony" was first defined in 1988 to mean:

> Murder, any drug trafficking crime as defined in section 924(c)(2) of title 18, United States Code, or any illicit trafficking in any firearms or destructive devices as defined in section 921 of such title, or any attempt or conspiracy to commit any such act, *committed within the United States.*

8 U.S.C. § 1101(a)(43) (1988) (emphasis added). In 1990, Congress amended this definition by striking "committed within the United States" from that section, thereby including foreign convictions. *See* Immigration Act of 1990 § 501(a), Pub.L. No. 101–649. Further, Congress amended the definition of "aggravated felony" to include "any illicit trafficking in any controlled substance." *See id.* Significantly, Congress provided that "[t]he amendments made by [this subsection] shall apply to offenses on or after the date of the enactment of this Act [November 29, 1990]...." *See* Immigration Act of 1990 § 501(b). Thus, because Mr. Ortiz's drug trafficking offense was committed in Guatemala and before the November 29, 1990 effective date of the 1990 amendment, his conviction could not constitute an aggravated felony

as defined by the 1990 version of the definition.

 That does not end our inquiry, however, because in 1996 Congress again amended the definition of "aggravated felony" by eliminating all previous effective dates in the definition. *See* IIRIRA § 321(b); [8] *Lettman v. Reno,* 168 F.3d 463, 467 (11th Cir.1999). IIRIRA § 321(c) established the "effective date" for cases after which this new definition of aggravated felony would be binding:

> (c) EFFECTIVE DATE—The amendments made by this section *shall apply to actions taken on or after the date of the enactment of this Act [September 30, 1996],* regardless of when the conviction occurred, and shall apply under section 276(b) [8 U.S.C. § 276(b) ] of the Immigration and Nationality Act only to violations of section 276(a) [8 U.S.C. § 276(a) ] of such Act occurring on or after such date.

*Valderrama–Fonseca,* 116 F.3d at 856 (quoting IIRIRA § 321(c), *reprinted in* 1996 U.S.C.C.A.N. at 1702) (emphasis added). Thus, whether the IIRIRA "aggravated felony" amendments are triggered in this case depends on whether there was an "action" taken on or after September 30, 1996, the effective date of the amended definition.

In *Valderrama–Fonseca,* 116 F.3d at 856–57, this court held that an "action" under section 321(c) "refers to orders and decisions issued against an alien by the Attorney General acting through the BIA or Immigration Judge." The First and Seventh circuits have both adopted the holding of *Valderrama–Fonseca. See Xiong v. I.N.S.,* 173 F.3d 601, 607 (7th Cir.1999); *Choeum v. I.N.S.,* 129 F.3d 29, 37 (1st Cir.1997); *but see Mendez–Morales v. I.N.S.,* 119 F.3d 738, 739 (8th Cir.1997)

---

8. Section 321(b) provides:
 (b) EFFECTIVE DATE OF DEFINITION— Section 101(a)(43) (8 U.S.C. § 1101(a)(43)) is amended by adding at the end the following new sentence: "Notwithstanding any other provision of law (including any effective date), the term applies regardless of

whether the conviction was entered before, on, or after the date of enactment of this paragraph [September 30, 1996]."
*Valderrama–Fonseca v. I.N.S.,* 116 F.3d 853, 856 (9th Cir.1997) (quoting IIRIRA § 321(b), *reprinted in* 1996 U.S.C.C.A.N. 1570, 1702).

(per curiam) (holding that judicial review by a court of appeals also constitutes an "action" under § 321(c)). The BIA has also adopted the position set forth in *Valderrama–Fonseca.* *See In re Batista–Hernandez,* 1997 WL 398681(BIA) at \*15 ("Inasmuch as this Board's consideration of the Immigration Judge's certification of the case constitutes an 'action,' the respondent is subject to [the amended definition].". Because the BIA dismissed the Ortizes' appeal on August 27, 1997, that dismissal constituted an "action" taken on or after September 30, 1996, thereby triggering the 1996 IIRIRA aggravated felony amendments.

■ The fact that the Ortizes' petition for asylum was filed prior to the effective date of the IIRIRA does not help them. In *Talanoa v. I.N.S.,* 397 F.2d 196 (9th Cir.1968), the court explained: "Petitioner had been eligible for the relief sought when he first applied for it. He became ineligible by virtue of the change in the law, to-wit, he became unable to obtain a labor certification pursuant to [the changed law]. It is settled that when the law is changed before a decision is handed down by an administrative agency, the agency must apply the new law." *Id.* at 200. The BIA's application of the IIRIRA does not involve a retroactive application of the law because an alien pursuing an appeal with the BIA "is still the subject of administrative adjudication and has thus not established any right to the benefit he is seeking to obtain by his application." *Matter of U–M–,* 20 I & N Dec. 327, 333, 1991 WL 353519 (BIA 1991), *aff'd* 989 F.2d 1085 (9th Cir.1993). Thus, the BIA was required to apply the law existing at the time of its review, even if different from the law applied by the IJ.

■ Under 8 U.S.C. § 1101(a)(43) (1997), an aggravated felony is defined as "illicit trafficking in a controlled substance ... including a drug trafficking crime...." Further, section 1101(a)(43) provides that this "term applies ... to such an offense in violation of the law of a foreign country for which the term of im-

prisonment was completed within the previous 15 years." 8 U.S.C. § 1101(a)(43) (1997). There is no question that Mr. Ortiz's 1986 drug trafficking conviction in violation of Guatemalan law constitutes an aggravated felony under the applicable definition of that term. We hold that the BIA did not err in holding that Mr. Ortiz's conviction for drug trafficking constituted an "aggravated felony."

## IV. *CONCLUSION*

The petition for review is DENIED, and the mandate is STAYED for 90 days from the date of this disposition to allow the Ortizes an opportunity to file a motion to reopen with the BIA. *See Aguilar–Escobar,* 136 F.3d at 1241; *Olivar,* 967 F.2d at 1383. The mandate will issue automatically at the end of the 90–day period if the parties do not notify the court otherwise.