Maria **GUADALUPE–CRUZ**; **Patricia Flores, a.k.a. Patricia Flores–Cruz; Maria Guadalupe–Flores, Petitioners,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 99–70754.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 2, 2000.

Filed Feb. 27, 2001.

Andrew Michael Knapp, Law Offices of Andrew Knapp, Anaheim, California, for the petitioners.

David M. McConnell, Assistant Director, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for the respondent.

Before: B. FLETCHER, O'SCANNLAIN, and RONALD M. GOULD, Circuit Judges.

Opinion by Judge RONALD M. GOULD; Dissent by Judge . O'SCANNLAIN.

RONALD M. GOULD, Circuit Judge:

Maria Guadalupe–Cruz and her daughters Patricia Flores–Cruz and Maria Guadalupe Flores–Cruz (collectively "Petitioners") appeal their final order of deportation entered by the Board of Immigration Appeals ("BIA") on June 7, 1999. At a hearing on March 28, 1997, an immigration judge ("IJ") denied Petitioners' applications for suspension of deportation, ruling that they had failed to satisfy the new continuous physical presence requirement (the "stop-time rule") set forth in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). Petitioners contend, in part, that the IJ improperly applied the stop-time rule before IIRIRA took effect.[1] Given the IJ's misapplication of law, Petitioners argue that the BIA erred by not reversing the IJ's decision. We agree, and reverse and remand to the BIA.

## I

Petitioners are citizens of Mexico who entered the United States without inspection on December 9, 1989. On October 17, 1996, the Immigration and Naturalization Service ("INS") served Petitioners with Orders to Show Cause ("OSCs") charging them as aliens deportable under section 241(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1251(a)(1)(B) (1994).

Petitioners appeared before an IJ on December 20, 1996, and admitted the factual allegations in the OSCs, conceded deportability, and requested leave to apply for suspension of deportation.[2] At a hearing on March 28, 1997—four days before IIRIRA took effect—the IJ considered Petitioners' applications for suspension of deportation. Finding that Petitioners had not satisfied IIRIRA's new stop-time rule, the IJ denied their suspension applications and found them deportable as charged.[3]

---

1. Petitioners also challenge the application of the stop-time rule to their cases, arguing that: (1) the stop-time rule should not apply to Orders to Show Cause served before IIRIRA was enacted; (2) the application of the stop-time rule to Petitioners is impermissibly retroactive; (3) the application of the stop-time rule violates procedural due process by depriving Petitioners of a suspension of deportation hearing; and (4) IIRIRA section 309(c)(5) violates equal protection by exempting some aliens from the stop-time rule on the basis of national origin. Given our holding, we do not reach these issues.

2. Before IIRIRA, an alien was eligible for suspension of deportation if (1) he or she "ha[d] been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of [the] application" for suspension of deporta-

tion; (2) he or she was a "person of good moral character"; and (3) deportation would result in "extreme hardship" to the alien or to an immediate family member who was a U.S. citizen or a lawful permanent resident. INA § 244(a)(1), 8 U.S.C. § 1254(a)(1) (1994).

3. Before IIRIRA, aliens accrued time toward the "continuous physical presence in the United States" requirement until they applied for suspension of deportation. Commencement of deportation proceedings had no effect on this accrual. Congress fundamentally altered this system by enacting IIRIRA's stop-time rule. The stop-time rule provides that the period of continuous physical presence in the United States shall be deemed to end when deportation proceedings commence. INA § 240A(d)(1), 8 U.S.C. § 1229b(d)(1). Thus, after IIRIRA, aliens must meet the con-

Petitioners appealed to the BIA arguing that the IJ should not have applied the stop-time rule four days before IIRIRA took effect. Relying on its decision in *In re Nolasco–Tofino*, Int. Dec. 3385, 1999 WL 218466 (BIA 1999) (en banc),[4] the BIA dismissed the appeal because Petitioners had not met the continuous physical presence requirement before being served with their OSCs. The BIA did not otherwise address the merits of Petitioners' claims, such as their challenge to the IJ's erroneous application of law. Petitioners now ask this court to review the application of IIRIRA's stop-time rule to their cases. Because this petition falls under IIRIRA's "transitional rules," *Kalaw v. INS*, 133 F.3d 1147, 1150 (9th Cir.1997), we have jurisdiction pursuant to 8 U.S.C. § 1105a(a), as amended by IIRIRA section 309(c), *Avetova–Elisseva v. INS*, 213 F.3d 1192, 1195 n. 4 (9th Cir.2000), and reverse.

## II

In *Astrero v. INS*, 104 F.3d 264 (9th Cir.1996), we held that IIRIRA's new stop-time rule could not be applied before its effective date of April 1, 1997. *Id.* at 266 (new stop-time rule has "no application" to case decided December 30, 1996). Disregarding our decision in *Astrero* as "dictum," the IJ impermissibly applied the stop-time rule to Petitioners' suspension applications, even though the suspension hearing occurred before April 1, 1997. The IJ's characterization of *Astrero*'s holding as "dictum" was incorrect.[5] Had the IJ relied on pre-IIRIRA law as he should have, Petitioners would have met the pre-IIRIRA continuous physical presence requirement. The BIA summarily affirmed the IJ without addressing the premature application of the stop-time rule.

The government asserts that even if the IJ erred, such error was harmless because (1) the INS would have appealed any decision to grant Petitioners suspension of deportation, and (2) Petitioners' final order of deportation would have been issued by the BIA well after IIRIRA's effective date.

Certainly, if the IJ had followed pre-IIRIRA law and granted Petitioners' suspension applications, the INS could have appealed. 8 C.F.R. § 3.1(b)(2). And had it done so, because the IJ heard Petitioners' suspension applications only four days before IIRIRA took effect, the BIA surely would have heard the case after April 1,

---

tinuous physical presence requirement before they enter deportation proceedings.

**4.** In *Nolasco*, the BIA held that IIRIRA section 309(c)(5)(A) gives effect to the stop-time rule in all suspension of deportation cases heard on or after April 1, 1997.

**5.** In *Astrero* we held: (1) that the denial of asylum was supported by substantial evidence; (2) that IIRIRA's transitional rule with regard to suspension of deportation was not to be applied until IIRIRA took effect on April 1, 1997; and (3) that the BIA's finding that Petitioner failed to meet the hardship requirement for suspension of deportation was not an abuse of discretion. *Id.* at 266–67. Our holding concerning IIRIRA's effective date was made with deliberate reasoning and in response to the government's contention that IIRIRA's transitional rules applied before April 1, 1997. It is true that we might have affirmed solely on grounds that Petitioner did not meet the hardship requirement, without reaching the issue of IIRIRA's effective date.

However, we deliberately addressed the effective date issue. Thus, our reasoned decision cannot properly be characterized as mere dictum. *United States v. King*, 122 F.3d 808, 811 (9th Cir.1997) ("Although it is true that we could have resolved *Twine* without addressing the 'specific intent to threaten' issue, the fact is that we squarely decided to resolve that question. In doing so, we did not engage in an unnecessary or superfluous exercise."); *see also Export Group v. Reef Indus., Inc.*, 54 F.3d 1466, 1471 (9th Cir.1995) (per curiam) (" '[W]here a decision rests on two or more grounds, none can be relegated to the category of obiter dictum.' ")(quoting *Woods v. Interstate Realty Co.*, 337 U.S. 535, 537, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949)).

Moreover, subsequent Ninth Circuit opinions characterize our conclusion regarding the application of IIRIRA as *Astrero*'s "holding" and "decision." *See, e.g., Barahona–Gomez v. Reno*, 167 F.3d 1228, 1233 n. 5 (9th Cir.1999) ("holding"); *United States v. Zarate–Martinez*, 133 F.3d 1194, 1199 (9th Cir. 1998) ("decision").

1997 and would have been required to apply IIRIRA's stop-time rule on appeal. *Ram v. INS*, 2001 WL 173309, —— F.3d ——, No. 99–70918 (9th Cir. filed Feb. 8, 2001). But it is also possible that the INS would *not* have appealed a decision to grant Petitioners' suspension applications,[6] and Petitioners would have prevailed.

We will not speculate about what might have occurred had the IJ correctly applied the then-current, pre-IIRIRA law. To adopt the INS's argument would leave Petitioners without a remedy for the IJ's error in disregarding *Astrero*. We will not deny Petitioners a remedy for serious procedural error based only on impermissible guesses and conjecture about what might have been.

Our conclusion is reinforced by *Castillo–Perez v. INS.*, 212 F.3d 518 (9th Cir.2000). There, Castillo's counsel did not timely file an application to suspend deportation. The IJ concluded that the application was abandoned. Castillo then appealed to the BIA. It held that Castillo had shown, prima facie, ineffective assistance of counsel but denied his petition because IIRIRA had imposed the stop-time rule after the IJ's ruling and before the BIA's decision. *Id.* at 522. The BIA held that, under the stop-time rule, Castillo no longer was able to meet the necessary seven-year continuous physical presence requirement. *Id.* We held, in turn, that there was nonetheless ineffective assistance of counsel and we remanded to the BIA, instructing it to order a hearing before an IJ in which Castillo would be entitled to apply for suspension of deportation under pre-IIRIRA law. We reasoned expressly, and as pertinent here:

> [The stop-time rule] cannot be applied to Castillo, because he must receive a hearing under the law that applied to him at the time his original hearing occurred. Any other remedy would be inconsistent with the due process guarantees afforded to aliens in deportation proceedings.

*Id.*

We reverse and remand to the BIA with instructions to remand to the IJ. If Petitioners pursue their suspension applications, the IJ, in determining whether Petitioners are eligible for suspension of deportation, shall (1) apply the law as it existed on March 28, 1997, and (2) consider the current facts and Petitioners' current circumstances. *See Chookhae v. INS,* 756 F.2d 1350, 1352 (9th Cir.1985) (on remand, BIA must evaluate application for suspension of deportation in light of "current hardship to the citizen children of the petitioner").[7]

REVERSED and REMANDED.

O'SCANNLAIN, Circuit Judge, dissenting:

Our review in this case is limited to the decision of the Board of Immigration Ap-

6. "Following the issuance of a written decision by the Immigration Judge to grant suspension of deportation, District Counsel must decide whether to appeal the grant or waive the government's right to appeal." Memorandum from INS General Counsel Raymond M. Momboisse to All District Counsels (Apr. 13, 1989), *reproduced in* 66 Interpreter Releases 642 (June 6, 1989).

7. The dissent contends that we depart from the principle that the BIA is to apply current law in cases that come before it. We do not disagree with that principle, but hold that the BIA had a duty to remedy the IJ's error. The dissent urges that we improperly review the IJ's decision. To the contrary, we review the BIA's error in not addressing the error of the IJ.

The dissent relies upon *Ortiz v. INS,* 179 F.3d 1148 (9th Cir.1999). We intend no harm to that precedent, but, *Ortiz* is not controlling: There, the IJ misapplied the then-current law regarding the definition of an "aggravated felony." *Id.* at 1155. On appeal, the law had changed: what had been error became law. The BIA therefore applied the correct law regarding the definition of "aggravated felony." Here, in contrast, on appeal the law regarding *Astrero* had not changed. *Astrero*'s holding was still binding. The BIA erred by disregarding the IJ's misapplication of *Astrero* and a remedy is warranted.

peals ("BIA"). The BIA did not err in applying the stop-time rule to the petitioners when it dismissed their appeal in 1999, over two years after the stop-time rule took effect. Nonetheless, the majority reverses the BIA premised on the legal error of the immigration judge ("IJ") who considered the petitioners' application for suspension of deportation. Because I believe that settled principles of law and our court's directly controlling precedent preclude us from reversing on this basis, I must respectfully dissent.

### I

I agree with the majority that the IJ erred in applying the stop-time rule, IIRIRA § 309(c)(5)(A), four days before its April 1, 1997, effective date. *Astrero v. INS,* 104 F.3d 264, 266 (9th Cir.1996). Our review in a case such as this, however, is limited to the BIA's dismissal of the petitioners' appeal, not the IJ's decision. *See, e.g., Elnager v. INS,* 930 F.2d 784, 787 (9th Cir.1991) ("[T]his court's review is limited to the decision of the BIA."); *Rodriguez–Rivera v. INS,* 848 F.2d 998, 1002 (9th Cir.1988) (same). The question properly before us, then, is whether the BIA erred in dismissing the petitioners' appeal on the basis of the IIRIRA stop-time rule, not whether the IJ erred.

It is well settled that the BIA must decide cases under current law. *Urbina–Mauricio v. INS,* 989 F.2d 1085, 1088 n. 4 (9th Cir.1993) ("When the law is amended before an administrative agency hands down a decision, the agency *must* apply the new law.") (citing *Ziffrin, Inc. v. United States,* 318 U.S. 73, 78, 63 S.Ct. 465, 87 L.Ed. 621 (1943); *Talanoa v. INS,* 397 F.2d 196, 200 (9th Cir.1968)) (emphasis added). The IJ's deportation order did not become final until the BIA dismissed the petitioners' appeal on June 7, 1999, well after the effective date of the IIRIRA stop-time rule. *See* 8 C.F.R. § 241.31 (stating that "an order of deportation . . . shall become final upon dismissal of an appeal by the Board of Immigration Ap-

peals . . ."). In *Astrero,* by contrast, the final order of deportation was issued prior to April 1, 1997. *Astrero,* 104 F.3d at 265. Accordingly, the BIA's dismissal of the petitioners' appeal on the basis of the stop-time rule was fully consistent with *Astrero.* In fact, the BIA was *bound* to apply the stop-time rule in this case. *Urbina–Mauricio,* 989 F.2d at 1088 n. 4.

### II

The majority correctly notes that the BIA summarily affirmed the IJ "without addressing the premature application of the stop-time rule." *Supra* at 1211. The question remains, however, what the BIA should have- or even could have done about it. By its disposition in this case, the majority holds that the BIA was required to reverse and to remand with directions that the IJ determine the petitioners' eligibility for suspension of deportation under pre-IIRIRA law. In so holding, I am afraid that the majority has jettisoned the principle that the BIA must apply current law in the cases that come before it.

In fact, the notion the BIA erred by failing to address the petitioners' appeal under pre-IIRIRA law directly contradicts our decision in *Ortiz v. INS,* 179 F.3d 1148 (9th Cir.1999). In *Ortiz,* the IJ had determined that the petitioner was an alien convicted of an aggravated felony-and hence ineligible for political asylum pursuant to 8 U.S.C. § 1101(a)(43)-on account of a 1986 Guatemalan drug trafficking conviction. We recognized that the IJ erred as a matter of law in applying § 1101(a)(43) to the petitioner, stating that such conviction "could not constitute an aggravated felony as defined by the 1990 version of the definition" in effect at the time of the 1995 deportation hearing. *Id.* at 1155. Without addressing the IJ's legal error, the BIA dismissed the petitioner's appeal in 1997, again on the ground that he was ineligible for asylum as one convicted of an aggravated felony. *Id.* at 1151. Nevertheless, we affirmed the BIA's decision, because

Congress amended the definition of "aggravated felony" in 1996 while the petitioner's appeal before the BIA was still pending. Notwithstanding the IJ's "serious procedural error," *supra* at 1212, we held that the BIA properly dismissed the petitioner's appeal based on the subsequent 1996 IIRIRA aggravated felony amendments. *Id.* at 1156. We explained:

> ... an alien pursuing an appeal with the BIA 'is still the subject of administrative adjudication and has thus not established any right to the benefit he is seeking to obtain by his application.' *Matter of U–M–*, 20 I & N Dec. 327, 333, 1991 WL 353519 (BIA 1991), aff'd. 989 F.2d 1085 (9th Cir.1993). Thus, the BIA was required to apply the law existing at the time of its review, even if different from the law applied by the IJ.

*Id.*

*Ortiz* directly addresses the majority's concerns with the IJ's erroneous application of the stop-time rule. Under our precedent, aliens in deportation proceedings have the right to have their cases decided under the law as it exists at the time of a final administrative order, but no more. As long as their appeal to the BIA is still pending, they simply have not "established any right" to have their cases decided according to the law as it existed at the time of their hearing before the IJ- even where, as in both *Ortiz* and the present case, the IJ relied on an erroneous interpretation of the law in denying their applications for discretionary relief.[1]

Because the petitioners did not have any established right to have their applications for suspension of deportation decided under pre-IIRIRA law, their case contrasts

sharply with *Castillo–Perez v. INS*, 212 F.3d 518 (9th Cir.2000), upon which the majority relies. In *Castillo–Perez*, the petitioners' right to effective assistance of counsel in deportation proceedings was violated. We remanded with instructions that the petitioners' applications for suspension of deportation be decided, nunc pro tunc, under pre-IIRIRA law because this was the only way to remedy the constitutional violation. *Id.* at 522. Here, in contrast, remanding with instructions to apply pre-IIRIRA law to the petitioners' applications is not necessary to remedy a violation of their constitutional rights because no such rights were violated in the first instance. The petitioners simply had the right to have the BIA's final order decided consistently with currently-existing law. *Ortiz,* 179 F.3d at 1156. This is exactly what the BIA did.

### III

I note, finally, that the majority does not appear to dispute the fact that the BIA must apply the IIRIRA stop-time rule to the petitioners should their case again come before it following remand to the IJ. The reason that this is so, however, is the very reason why the BIA was correct to begin with: it must decide cases based on the law as it currently exists. The majority fails to heed this principle, and, in my view, expands our review beyond its proper limits. Accordingly, I respectfully dissent.

---

1. Of course, in *Ortiz*, the IJ erroneously interpreted the substantive import of a prior version of 8 U.S.C. § 1101(a)(43), whereas here the IJ erroneously interpreted the effective date of the IIRIRA stop-time rule itself, applying the rule to petitioners prematurely. I do not believe, however, that this difference provides a principled basis on which to distinguish *Ortiz*. In both cases, the IJ's denial of discretionary relief was based on an error of

law. In both cases, a change in law went into effect while the petitioners' appeals to the BIA were pending-here, the stop-time rule went into effect four days after the hearing before the IJ. In both cases, the petitioners were ineligible for discretionary relief under the terms of the new law. In *Ortiz*, we upheld the BIA's dismissal of the petitioner's appeal notwithstanding the IJ's error. The same result should have been reached here.