Alvaro Gerardo ORTIZ;
et al., Petitioners,

v.

John ASHCROFT, Attorney
General,* Respondent.

No. 02–73225.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 13, 2004.

Decided April 14, 2004.

---

* Because the Immigration and Naturalization Service ceased to exist on March 1, 2003, Attorney General John Ashcroft has been substituted as respondent. *See* Fed. R.App. P. 43(c)(2).

Garish Sarin, Esq., Los Angeles, CA, for Petitioners.

Regional Counsel, Laguna Niguel, CA, CAC–District Counsel, Esq., Office of the District Counsel, Department of Homeland Security, Los Angeles, CA, Ronald E. Le-Fevre, Chief Legal Officer, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, Mary Jane Candaux, Esq., Jacqueline Dryden, U.S. Department of Justice, Washington, DC, for Respondent.

Before: B. FLETCHER, PREGERSON, and BRUNETTI, Circuit Judges.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

## MEMORANDUM **

Alvaro Gerardo Ortiz petitions for relief under Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("Convention Against Torture" or "CAT"), and requests adjustment of status because he is eligible for a skilled worker visa.[1] Ortiz previously filed an asylum application, but was denied relief because he stated that he had been convicted of drug trafficking in Guatemala. The Ninth Circuit denied Ortiz's claim of ineffective assistance of counsel in showing asylum eligibility, and held that drug trafficking was an aggravated felony. *Ortiz v. I.N.S.*, 179 F.3d 1148 (9th Cir.1999). The *Ortiz* court stayed the mandate for ninety days to give Ortiz the opportunity to file a motion to reopen and apply for Convention Against Torture relief. The BIA denied Ortiz's motion to reopen and petition for Convention Against Torture relief and denied adjustment of status. Ortiz petitions for review of that denial.

We have jurisdiction to review the denial of Ortiz's motion to reopen under 8 U.S.C. § 1105a(a) (1994) (repealed), because deportation proceedings were initiated against Ortiz before the Illegal Immigration Reform and Immigrant Responsibility Act was passed in 1996. *See Sarmadi v. I.N.S.*, 121 F.3d 1319, 1321 (9th Cir.1997) (holding that denial of motion to reopen is reviewable).

We review the denial of a motion to reopen for abuse of discretion, but may overturn it if the BIA acted " 'arbitrarily, irrationally, or contrary to law.' " *Singh v. I.N.S.*, 213 F.3d 1050, 1052 (9th Cir.2000) (quoting *Eide–Kahayon v. INS*, 86 F.3d 147, 149 (9th Cir.1996)). Purely legal

1. Ortiz is the lead petitioner. His wife, Alma Jeaneth Lopez, and their three children, Nelson, Jeaneth Esmerala, and Cristian, have filed derivative applications.

questions decided by the BIA are reviewed de novo. *Id.*

## I. Adjustment of Status

■ In his motion to reopen before the BIA, Ortiz applied for relief under CAT and for adjustment of status because he met the requirements for a skilled worker visa. However, as the BIA pointed out, Ortiz is not eligible for adjustment of status because he was convicted of drug trafficking. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(II) (establishing inadmissibility of anyone convicted of "a violation of ... any law or regulation of ... a foreign country relating to a controlled substance"). Contrary to Ortiz's argument, the Legal Immigration Family Equity (LIFE) Act Amendments of 2000 do not "excuse any grounds of inadmissibility under section 212(a) of the Act (8 U.S.C. § 1182(a))." Temporary Removal of Certain Restrictions of Eligibility, 66 Fed.Reg. 16383 (March 26, 2001); *see also* 8 C.F.R. § 245.10(b)(3) (implementing regulations for the LIFE Act, noting that petitioner is not eligible for LIFE Act relief if he is inadmissible under section 212 of the Act and inadmissibility is not waived). We affirm the BIA's denial of Ortiz's motion to reopen for adjustment of status.

## II. Convention Against Torture

### A. Prima Facie Case

■ The Convention Against Torture prohibits signatory states, including the United States, from returning a person to a country where there is substantial evidence that he will be tortured. *See Al–Saher v. I.N.S.*, 268 F.3d 1143, 1146 (9th Cir.2001). To be eligible for CAT relief, Ortiz must show that it is more likely than not that he would be tortured if he is returned to Guatemala. *Kamalthas v. I.N.S.*, 251 F.3d 1279, 1284 (9th Cir.2001).

The implementing regulations for the Convention Against Torture define torture as:

> [A]ny act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as ... punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1). "In order to constitute torture an act must be directed against a person in the offender's custody or physical control." *Id.* § 208.18(a)(6).

In contrast to asylum, to obtain relief under the Convention Against Torture, Ortiz does not have to prove that he was tortured on account of a particular protected ground. *Kamalthas*, 251 F.3d at 1283. However, torture is more difficult to prove than persecution. *Compare Gui v. I.N.S.*, 280 F.3d 1217, 1222–23, 1230 (9th Cir.2002) (holding that wiretapping, threats, interrogation, and intentional car accidents did not constitute torture) *with Al–Saher*, 268 F.3d at 1147 (holding that petitioner was tortured where he was repeatedly beaten and on a few occasions burned with cigarettes over the course of a few months in prison).

In his declaration submitted with the motion to reopen, Ortiz asserts that on two separate occasions he was falsely accused of crimes, then arrested, incarcerated, and repeatedly beaten; the second time he was imprisoned for three years. He was also taken to a house by police at gunpoint and left naked; Ortiz states that he feared for his life at that time. He believes that the police targeted him because of his father's

union activities, in an attempt to discourage his father from being active on behalf of workers' rights. Although Ortiz's testimony was not fully developed at his brief and problematic hearing before the IJ, he did testify that he was falsely arrested and imprisoned twice, and beaten repeatedly over the course of three years. The IJ did not make an adverse credibility finding.

As corroboration, Ortiz submitted with his motion to reopen the 1998 State Department Country Report for Guatemala, which details: (1) corruption in the judicial system; (2) the continued practice of illegal, arbitrary, and lengthy detentions; and (3) threats against public sector labor leaders and violence against (including murder of) various labor leaders in the recent past.

The abuse Ortiz experienced at the hands of the Guatemalan police is not unlike the beatings that the *Al–Saher* court held constituted torture. *Al–Saher*, 268 F.3d at 1147. However, the current situation in Guatemala, and whether the police would attempt to inflict the same suffering if Ortiz were returned, are unclear. Whether Ortiz's father still lives in Guatemala and is still active in his union, whether Ortiz has family or friends who have experienced recent problems with the Guatemalan police, and whether the police made any threats along with their previous treatment of Ortiz are also unclear. Although the BIA had not earlier considered relief under the Convention Against Torture in Ortiz's case, it did not order a hearing when Ortiz moved to reopen. The BIA noted that Ortiz had not presented evidence about the future possibility of torture, but never gave him an opportunity to do so. We remand with instructions for the BIA to require the IJ to conduct a hearing, allowing Ortiz to present—for the first time—evidence to support his CAT claim.

The BIA rested its decision not to reopen partly on the erroneous legal ground that Ortiz's aggravated felony conviction bars him from all relief under the Convention Against Torture. To the contrary, the "particularly serious crime" bar does not prevent Ortiz from obtaining CAT relief.

## B. "Particularly Serious Crime"

█ The BIA held that Ortiz was "ineligible for relief under the Convention based upon his conviction." A.R. 4 (citing 8 C.F.R. §§ 208.16(d)(2) and (3)). The regulations do provide that where the petitioner has been convicted of a "particularly serious crime," he is not entitled to full benefits under the Convention Against Torture. *See* 8 C.F.R. §§ 208.16(d)(2) (applying the pre-IIRIRA withholding of removal bar for "particularly serious crimes" to the Convention Against Torture for pre-IIRIRA petitioners). The regulations also provide that "it shall be presumed that an alien convicted of an aggravated felony has been convicted of a particularly serious crime." 8 C.F.R. §§ 208.16(d)(3).

However, even a "particularly serious crime" does not completely bar Convention Against Torture relief, because it would violate the most basic principle of the Convention to return a person to a country where it is more likely than not that he would be tortured. Instead, a person who is "entitled to protection under the Convention Against Torture; and is subject to the provisions for mandatory denial of withholding of removal under § 208.16(d)(2) or (d)(3), shall be granted deferral of removal to the country where he or she is more likely than not to be tortured." 8 C.F.R. § 208.17(a). Deferral of removal does not result in a grant of United States residency, and the deferral is subject to termination if an immigration judge decides that country conditions have changed in the country of torture. *Id.*

§ 208.17(b)(iv). However, it is clear that the BIA erred in holding that an aggravated felony is a complete bar to relief under the Convention Against Torture.

Further, as a result of its erroneous holding, the BIA did not consider Ortiz's eligibility for exceptions to the "particularly serious crime" bar that would entitle Ortiz to full benefits under the Convention. For example, Ortiz appears to meet the requirements for the discretionary exception in 8 C.F.R. § 208.16(d)(3), because Ortiz: (1) was placed in deportation proceedings before IIRIRA's effective date and (2) "was sentenced to an aggregate term of imprisonment of less than 5 years."

In addition, according to BIA precedent, drug trafficking may not be a "particularly serious crime" in the "exceptional" circumstances where the crime at issue involved, "at a minimum":

> (1) a very small quantity of controlled substance; (2) a very modest amount of money paid for the drugs in the offending transaction; (3) merely peripheral involvement by the alien in the criminal activity, transaction, or conspiracy; (4) the absence of any violence or threat of violence, implicit or otherwise, associated with the offense; (5) the absence of any organized crime or terrorist organization involvement, direct or indirect, in relation to the offending activity; and (6) the absence of any adverse or harmful effect of the activity or transaction on juveniles.

*In re Y–L–*, 23 I. & N. Dec. 270, 276–77 (BIA March 5, 2002), *disagreed with on other grounds, Zheng v. Ashcroft,* 332 F.3d 1186, 1196 (9th Cir.2003). Ortiz's conviction may meet the requirements for this exception, because Ortiz credibly testified that he did not traffic in drugs. This may qualify as an "exceptional" circumstance under *In re Y–L–,* because while Ortiz may not have benefitted from or caused harm by drug trafficking, he cannot challenge his conviction.

We remand for an evidentiary hearing on Ortiz's prima facie eligibility for Convention Against Torture relief and for consideration as to whether Ortiz is eligible for deferral of removal or for full benefits under the Convention.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**