Hamoudi H. KHOURASSANY; Hashem H. Khourassany; Fetam Khourassany, Petitioners,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 99–70020.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 10, 2000

Decided April 5, 2000

Murray D. Hilts, San Diego, California, for the petitioners.

Marshall T. Golding and Susan Houser, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for the respondent.

Before: WALLACE, PREGERSON and THOMAS, Circuit Judges.

THOMAS, Circuit Judge:

In this appeal, we identify the proper procedure for petitioners seeking review of their deportation orders on the ground that they may obtain relief from deportation under Article 3 of the Convention on Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("Convention on Torture"), June 26, 1987, S. Treaty Doc. No. 100–20 (1988), 1465 U.N.T.S. 85.

I

Petitioners Hamoudi H., Fetam, and Hashem Khourassany, all Israeli citizens, petition for review of the Board of Immigration Appeals ("BIA") decision dismissing his appeal from the denial by the immigration judge ("IJ") of his application for asylum and withholding of deportation and his request for voluntary departure.[1] Petitioners also request that we remand the petition to the BIA so that petitioners may file a motion to reopen for consideration of relief under the Convention on Torture.

---

1.  The claims of Hamoudi's wife, Fetam, and minor child, Hashem, are derivative of his claims and make no independent claims of eligibility for relief.  Because the claims of his wife and child are derivative, their petitions are also denied in light of our holding.

Hamoudi Khourassany, a 39 year-old Israeli citizen of Palestinian ancestry and Muslim faith, entered the United States in May 1992 as a nonimmigrant visitor and remained in the United States after his visa expired. The INS issued an order to show cause to Hamoudi charging the deportable offense of remaining in the United States longer than permitted, in violation of 8 U.S.C. § 1251(a)(1)(C)(i), *transferred to* 8 U.S.C. § 1227(a)(1)(C)(i). Two other orders to show cause were issued to his wife, Fetam, and minor child, Hashem, charging them with the deportable offense of entering the United States without inspection in violation of § 1251(a)(1)(B), *transferred to* 8 U.S.C. § 1227(a)(1)(B). Khourassany admitted the factual allegations in the order to show cause and conceded deportability, but requested asylum, withholding of deportation, and voluntary departure.

At the merits hearing, Khourassany testified that he was a successful businessman in Israel, owning several businesses and acting as a sales representative for a national chocolate business. He claims that he left Israel because of the harassment to which he was subjected by the "Shabak," the internal Israeli security organization. Khourassany's problems with the Shabak began in 1980, when they began questioning him about his activities "many times, tens of times," and extended through 1987. During each of these encounters, Khourassany was not detained for lengthy periods nor physically harmed. The Shabak agents, however, were "tense" and they made him "nervous."

The Shabak also inquired into and impaired Khourassany's business activities. According to Khourassany, a Shabak agent attempted to link the capital he used to purchase a business to the Palestinian Liberation Organization and the Altahreer organization.

Shabak agents also questioned Khourassany "a few times" in the early morning hours about a large restaurant that he owned on land leased from Israel, located next to an Israeli military base in Haifa, a large northern city in close proximity to the Israeli border with Lebanon. According to Khourassany, the police eventually closed the restaurant, without cause. Khourassany sought a court order to re-open the restaurant. However, based on a confidential letter presented to the judge by the police, the judge ordered that the restaurant remain closed, an order which Khourassany did not appeal. According to Khourassany, the Shabak later offered to reopen Khourassany's restaurant if he "report[ed] on my family, my friends." Khourassany was subsequently forced to sell some of his other businesses after being unable to secure any extensions from the bank on making loan payments because of "the upper power."

His wife also reported that "some people," including the local government officer, had inquired into his whereabouts since he left Israel. Khourassany has a general fear that he would be detained at the airport and "would suffer" if he returned.

The IJ held that although Khourassany was "generally credible" the repeated questioning and release by the Shabak did not constitute persecution. Particularly, the IJ noted that there was no evidence of any kind of physical abuse or mistreatment. The IJ also noted that Khourassany had freedom to travel, was a successful businessman, and that his family continued to live in Israel without mistreatment. Furthermore, the IJ determined that the restaurant may have posed a security threat given its location near Lebanon and a military base. As a result, the IJ rejected Khourassany's application for asylum and withholding of deportation, and also found him statutorily ineligible for voluntary departure because he had not been a person of good moral character for the preceding five-year period.

The BIA affirmed the IJ's determination in a written decision reiterating many of the IJ's conclusions. In particular, the BIA noted that Khourassany failed to establish persecution based on his political

opinion, social group or religion because his overall testimony showed that he was not involved politically, that he worked successfully with the Jewish residents of Israel and that he was not targeted for conversion to Judaism or otherwise.

## II

Khourassany first urges us to remand his case to the BIA to allow him to apply for relief under Article 3 of the Convention on Torture. This is not an appropriate method of seeking this relief and we deny the motion.

The Foreign Affairs Reform and Re-structuring Act of 1998 ("Foreign Affairs Reform Act"), § 2242, Pub.L. No. 105–277, Div. G, 112 Stat. 2681, 2681–761 (Oct. 21, 1998), implemented Article 3 of the Torture Convention in the United States. Article 3 provides that a signatory nation will not "expel, return . . . or extradite" a person to another country "where there are substantial grounds for believing that he would be in danger of being subjected to torture." *Id.* Passage of the Foreign Affairs Reform Act and the subsequent enactment of its implementing regulations represented a "change in eligibility for relief" that qualifies as "new information" arising "after the BIA has finalized deportation proceedings." *See Ortiz v. INS,* 179 F.3d 1148, 1152–53 (9th Cir.1999). As such, an asylum applicant's claims under the Convention on Torture must be "brought to the attention of the BIA" in the form of a motion to reopen proceedings. *See id.; see also* 8 C.F.R. § 208.18(b)(2) (allowing aliens under final

order of deportation, exclusion or removal as of March 22, 1999, to file motion to reopen under Convention on Torture). Motions to reopen proceedings under the Convention on Torture are governed by INS general provisions on motions to reopen, 8 C.F.R. §§ 3.1 and 3.2, with two notable exceptions.[2] The INS has also imposed two requirements in deciding whether to grant motions to reopen proceedings under the Convention on Torture. First, the motion must be filed with the BIA "within June 21, 1999," for those aliens who were ordered removed, or whose removal orders became final, before March 22, 1999.[3] *See* 8 C.F.R. § 208.18(b)(2)(i). The applicant must also offer sufficient evidence to establish a *prima facie* case that his or her removal must be withheld or deferred under 8 C.F.R. § 208.16(c) or § 208.17(a).

▆▆▆ Motions to reopen for consideration of claims under the Convention on Torture may not be urged in the first instance before our court; an applicant must first exhaust his or her administrative remedies before the BIA. *See Ortiz,* 179 F.3d at 1152. However, Khourassany does not ask us to address the merits of a motion to reopen, he requests that we remand the petition to the BIA so that he may present a motion to reopen. His request has some basis in the Foreign Affairs Reform Act because § 2242(d) limits judicial review of an applicant's claim under the Convention on Torture to review of "a final order of removal." *Id.; see also* 8 C.F.R. § 208.18(e).[4] Thus, if the BIA denial of a motion to reopen is not considered

---

2. First, the time and numerical limitations provided by the general rules for motions to reopen pursuant to 8 C.F.R. §§ 3.1 and 3.2 do not apply, and furthermore, the alien is not required "to demonstrate that the evidence sought to be offered was unavailable and could not have been discovered or presented at the former hearing." 8 C.F.R. § 208.18(b)(2).

3. In contrast, aliens in exclusion, deportation, or removal proceedings on or after March 22, 1999, may apply for withholding of removal under the Convention on Torture, and may be

considered for "deferral of removal" under 8 C.F.R. § 208.17(a) if applicable. *See* 8 C.F.R. § 208.18(b)(1); *see also* 8 C.F.R. § 208.16(c).

4. Section 2242(d) of the Foreign Affairs Reform Act places two jurisdictional limitations on our review of INS decisions pursuant to the Convention on Torture. First, notwithstanding any other provision of law and except as provided pursuant to regulations promulgated under § 2242(b) of the Foreign Affairs Reform Act, the courts cannot exercise jurisdiction "to review the regulations adopted to implement" section 2242(d).

"a final order of removal," then remand of this petition might be appropriate so that the Convention on Torture claims could be presented in the petition for review. Conversely, if a BIA denial of a motion to reopen to consider Convention on Torture claims is "a final order of removal," then remand would be inappropriate because petitioner would have an administrative remedy separate from that at issue in the instant petition.

We requested that the INS provide us with its view on this subject. In response, the INS represented that, as a matter of official policy, it considered the denial of a motion to reopen proceedings to consider a claim based on the Convention on Torture to be "a final removal order" and thus separately subject to judicial review under the Foreign Affairs Reform Act and its implementing regulations. Thus, the INS urged us to proceed to the merits of the instant petition for review without remand, reasoning that petitioner could file a post-petition motion to reopen with the BIA independent of this proceeding.

■ We agree with the INS's position. Khourassany may file a motion to reopen with the BIA for consideration of claims under the Convention on Torture, but this must be accomplished severally from this pending petition. A denial from that motion is subject to judicial review limited to the BIA's decision on the motion to reopen. The Foreign Affairs Act does not require remand of a pending petition for review for the BIA's consideration of a post-petition motion to reopen. For these reasons, we deny the motion to remand.

### III

■ With the denial of the remand motion, we proceed to the merits of Khourassany's asylum and withholding of deportation claims. *See Ortiz*, 179 F.3d at 1148

(citing *Aguilar–Escobar v. INS*, 136 F.3d 1240, 1241 (9th Cir.1998)). Under our venerable standards of review of BIA decisions, we may grant the petition for review only if the evidence presented by Khourassany is such that a reasonable fact-finder would be compelled to conclude that the requisite fear of persecution existed. *See INS v. Elias–Zacarias*, 502 U.S. 478, 481 n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

■ Because the BIA left the IJ's positive credibility determination undisturbed, we accept Khourassany's testimony as true. *See Singh v. Ilchert*, 63 F.3d 1501, 1506 (9th Cir.1995). The burden of proof, of course, is on the alien to establish eligibility for asylum, *see Sangha v. INS*, 103 F.3d 1482, 1487 (9th Cir.1997), which he or she must do by offering "credible, direct, and specific evidence." *Prasad v. INS*, 47 F.3d 336, 338 (9th Cir.1995) (citation and internal quotation marks omitted).

■ The BIA properly concluded that Khourassany failed to present sufficient evidence to establish past persecution or a well-founded fear of persecution on account of political opinion, membership in a particular social group, or religion as a result of Hamoudi's repeated harassment by the Israeli secret police and the forced closure of his restaurant. *See* 8 U.S.C. § 1158(a); 8 U.S.C. § 1101(a)(42)(A).

Khourassany's testimony that he was harassed by the Shabak and local police falls far short of the required showing needed to compel a finding of persecution. Khourassany was detained and questioned by the Israeli police for only short periods of time, was never jailed or charged with any crime, and was never handcuffed, beaten or threatened injury by the Shabak. *See Singh v. INS*, 134 F.3d 962, 967 (9th Cir.1998) (repeated incidents of vandalism, in the absence of physical injury or

Foreign Affairs Reform Act, § 2242(d). Second, § 2242(d) provides that "nothing in this section shall be construed as providing any court jurisdiction to consider or review claims raised under the Convention [on Torture] ... *except as part of the review of a final order of removal*" under 8 U.S.C.

§ 1252. *Id.* (emphasis added). The implementing regulations reiterate this: "there shall be no judicial appeal or review of any action, decision, or claim raised under the Convention [on Torture or § 2242], except as part of the review of a final order of removal" under § 1252. 8 C.F.R. § 208.18(e).

threat of injury, insufficient to establish persecution); *Prasad,* 47 F.3d at 339 ("Brief detention does not necessarily establish persecution."); *Mendez–Efrain v. INS,* 813 F.2d 279, 283 (9th Cir.1987) (four-day detention absent threats, warnings or other harm insufficient to establish persecution).

Other aspects of Khourassany's testimony also support the BIA's conclusion that he was not subject to persecution. Khourassany was able to continue to operate his other businesses even after his restaurant was forced to close, and some members of his family continue to live in Israel now and to operate businesses without interference. *See Saballo–Cortez. v. INS,* 761 F.2d 1259, 1265 (9th Cir.1984); *cf. Kovac v. INS,* 407 F.2d 102, 107 (9th Cir.1969) (deliberate imposition of substantial economic disadvantage may indicate persecution). Khourassany retained his passport and was able to travel freely within Israel and to leave Israel without hindrance; nor did he fear venturing to the Israeli embassy in the United States to fax to his brother a power of attorney. *See Kotasz v. INS,* 31 F.3d 847, 852 (9th Cir.1994); *Rodriguez–Rivera v. U.S. Dept. of Immigration and Naturalization,* 848 F.2d 998, 1006 (9th Cir.1988) (*per curiam*). His contention that conditions in Israel are otherwise "extremely volatile" and that the Israeli government and other radical groups have used "brutal and torturous" tactics against Palestinians is simply too generalized to show that he is at "particular risk" of persecution. *See Kotasz,* 31 F.3d at 852.

Khourassany also provides insufficient testimony to establish that he was subject to persecution "on account of" political opinion, either imputed or direct, because of his Islamic faith, or based on his affiliation with the excessively diffuse "Muslim/Palestinian" social group. *See Sangha,* 103 F.3d at 1488–90; *Sanchez–Trujillo v. INS,* 801 F.2d 1571, 1576–76 (9th Cir. 1986); *Marcu v. INS,* 147 F.3d 1078, 1081

(9th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1496, 143 L.Ed.2d 650 (1999).

■ Because Khourassany fails to satisfy the standard for asylum, he necessarily fails to satisfy the more stringent standard for withholding of deportation. *See Ghaly v. INS,* 58 F.3d 1425, 1429 (9th Cir.1995).

## IV

■ The BIA did not err in finding him statutorily ineligible for voluntary departure based on his failure to meet the good moral character component of 8 U.S.C. § 1254(e) (1996). We review an agency's application of a statute *de novo. See Lafarga v. INS,* 170 F.3d 1213, 1215 (9th Cir.1999).

To be eligible for voluntary departure, an alien must show in part that he has been a person of good moral character for the five years immediately preceding his application for voluntary departure. *See* 8 U.S.C. § 1254(e) (1996); *Lopez v. INS,* 184 F.3d 1097, 1100 (9th Cir.1999). An alien is not considered to be of good moral character if during the five-year period he "knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law" in violation of an alien smuggler provision. 8 U.S.C. § 1101(f)(3); 8 U.S.C. § 1182(a)(6)(E)(i). The IJ and BIA correctly determined that Hamoudi Khourassany fell within this provision because he admitted that in 1995 he paid a smuggler to bring his wife and child into the United States illegally from Mexico. No exceptions or other waivers to the alien smuggler provision apply to Khourassany. *See* 8 U.S.C. § 1182(a)(6)(E)(ii) & (iii); 8 U.S.C. § 1182(d)(11).

## V

We deny the petition for review and the motion to remand. We stay the mandate for ninety days from the date this opinion is filed to allow petitioners the opportunity to file a motion to reopen with the BIA.[5] *See Ortiz,* 179 F.3d at 1156.

5. The INS argues that Khourassany is precluded from filing a motion to reopen under

the Convention on Torture because his claim

PETITION FOR REVIEW DENIED;
MOTION TO REMAND DENIED.

is time-barred by 8 C.F.R. § 208.18(b)(2)(i). However, this question is beyond the scope of our review on this petition. Indeed, to reach that question would be to address the merits of a petition for reopen not yet filed. Thus, we will adhere to our normal procedure with respect to these petitioners to allow the BIA to consider the merits of the motion, and any objections thereto, in the first instance. *See Ortiz*, 179 F.3d at 1156.