Raghuveer Balwant KHANUJA; Kashmira Aakansha Khanuja, aka Kashmira Raghuveer Khanuja; Shakti Raghuveer Khanuja, Petitioners,

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

Nos. 99–70510, 00–70599.
INS Nos. A72–143–633, A72–143–632, A72–143–634.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 14, 2001.

Decided April 4, 2001.

Before SCHROEDER, Chief Judge, WALLACE and TALLMAN, Circuit Judges.

## MEMORANDUM *

 Petitioner Khanuja argues that the BIA erred by finding that he and his family are not eligible for asylum.[1] Khanuja can establish eligibility for asylum only by presenting "credible, direct and specific evidence," *Khourassany v. INS,* 208 F.3d 1096, 1100 (9th Cir.2000) (quoting *Prasad v. INS,* 47 F.3d 336, 338 (9th Cir. 1995)), that supports "a well-founded fear of persecution on account of ... [his] religion...." *Duarte de Guinac v. INS,* 179 F.3d 1156, 1159 (9th Cir.1999). The BIA found that Khanuja had not satisfied this burden because: (1) Khanuja's testimony was not credible and (2) Khanuja did not demonstrate a nexus between the alleged persecution and his religion.

> The BIA's determination that [Khanuja] was not eligible for asylum must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole. It can be reversed only if the evidence presented by [Khanuja] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed.

*INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (internal quotations and citations omitted). We affirm.

Khanuja testified that he is a Sikh from the Maharashtra region of India. He testified that he and his family fled India because of religious persecution by the Shiv Sena, a Hindi faction that advocates the removal of Sikhs from India.

The IJ and the BIA found that Khanjua's testimony was not credible. Khanuja's testimony was riddled with material inconsistencies. For instance, he testified that in 1982 he delivered a speech and composed a play exhorting brotherhood between Hindu and Sikh and decrying conflict between the faiths. When the IJ pointed out that such activity in 1982 seemed unlikely impetus for an attack in 1988, Khanuja testified that he was "con-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

1. This Memorandum focuses on Khanuja's asylum claim because the claims of his wife and son are derivative of his own.

fused," that the attacks had occurred in 1987.

His two asylum applications also contain inconsistencies. In the initial application he indicated that he had never been arrested or detained by police. In the amended application, he said he had been arrested and detained for two days. In the initial application, he indicated that he sought asylum "because members of the Muslim religion do not want us in India" and noted that his wife "has received many threats on her life." In his amended application, he mentioned neither persecution by Muslims nor threats on his wife's life, citing only assaults by Hindus. These and other inconsistencies are substantial evidence supporting the BIA's determination that Khanuja's testimony was not credible.

The BIA's determination that Khanuja failed to demonstrate a nexus between the attacks and his religion is also supported by substantial evidence. Khanuja bore none of the traditional earmarks of his faith. He did not use the Sikh name, Singh. He did not wear his hair long in a comb or carry a dagger. He had not, according to his initial testimony, publicly proclaimed his faith for more than six years prior to the attack. He was not attacked while at worship. Only Khanuja's own testimony indicates that the attacks were religiously motivated, but the IJ and the BIA found that his testimony was not credible.

Considering the record as a whole, in light of the BIA's finding that Khanuja's testimony was not credible, the BIA's finding that Khanuja failed to show that the attacks were motivated by his religion is supported by substantial evidence.

■ Khanuja also moved to re-open his asylum case pursuant to INS regulations promulgated in 1999, *see* 8 C.F.R. §§ 208.16, 208.18, so that he could seek relief under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman or Degrading Treatment or Punishment (the "Convention"). G.A. Res. 39/46, U.N. GAOR, Supp. No. 51 at 197, U.N. Doc. A/RES/39/708 (Dec. 10, 1984) (entered into force as to the United States Nov. 20, 1994, signed Apr. 18, 1988). We review the BIA's determination not to re-open Khanuja's asylum proceeding for abuse of discretion. *See Kaveh–Haghigy v. INS*, 783 F.2d 1321, 1322 (9th Cir.1986) (per curiam).

■ To prevail on his motion to re-open, Khanuja was required to demonstrate that it was more likely than not that he would be tortured if he was removed to India. 8 C.F.R. §§ 208.16(c)(2), 208.18(b)(2). The regulations define torture as "an extreme form of cruel and inhuman treatment [that] does not include lesser forms of cruel, inhuman or degrading treatment . . . inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a). Khanuja's motion suffers two evidentiary deficiencies. First, he provides no current evidence indicating that Sikhs were persecuted in India at the time he moved to re-open. Second, the predicate facts upon which his motion relies (*i.e.*, that he is Sikh) are established only by his testimony, which the BIA found was not credible. Even setting these deficiencies aside and assuming *arguendo* that Khanuja would suffer the kind of religious persecution he alleges he has suffered in the past if he were returned to India, such mistreatment simply does not rise to the level of "torture" as defined by the regulations. Accordingly, the BIA did not abuse its discretion by denying Khanuja's motion to re-open.

AFFIRMED.