**BAO HUI CHEN, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 10–1059.

United States Court of Appeals, Third Circuit.

Argued June 23, 2011.

Filed: July 21, 2011.

Joshua E. Bardavid [Argued], Theodore N. Cox, New York, NY, for Petitioner.

Benjamin Zeitlin [Argued], Sharon M. Clay, Eric H. Holder, Thomas W. Hussey, United States Department of Justice, Office of Immigration Litigation, Civil Division, Washington, DC, for Respondent.

Before: HARDIMAN, GREENBERG, Circuit Judges, and POLLAK,* District Judge.

* The Honorable Louis H. Pollak, Senior District Judge for the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

OPINION OF THE COURT

HARDIMAN, Circuit Judge.

Bao Hui Chen, a citizen of China and a native of Fujian province, seeks review of a Board of Immigration Appeals (BIA) decision reversing the Immigration Judge's (IJ) grant of asylum. We will deny Chen's petition and affirm the BIA's order of removal.

I

Because we write for the parties, who are familiar with the facts and procedural history, we summarize them only briefly.

Chen entered the United States without inspection on July 10, 2001. On October 7, 2003, the Immigration and Naturalization Service (INS) issued a Notice to Appear, charging Chen with removability under 8 U.S.C. § 1182(a)(6)(A)(i). Before the IJ, Chen conceded removability, but sought asylum, withholding of removal, and protection under the Convention Against Torture (CAT).

The IJ heard testimony on the merits of Chen's asylum application on December 15, 2008. Chen testified that he and his wife, Lung Yiu Tai, have four children, all of whom were born in China. In 1996, Chen's wife was subjected to forced sterilization. In addition, the family was fined a total of 21,000 RMB for violating China's family planning policies.[1] Chen, who earned 800 RMB per month (or 9,600 RMB per year) as a construction worker, was forced to borrow 11,000 RMB from his family and friends to pay off a portion of the fines. Chen testified that "[t]he[] heavy fines crippled [him] as a sole provider for the family," and he stated that he "had no choice but to flee from China." App. 578. He borrowed an additional $50,000 from his family and friends, and hired a snakehead to smuggle him into the United States. Since his arrival to this country, Chen has been able to pay back the 11,000 RMB he borrowed from his family and friends, as well as the 9,000 RMB fine imposed in 2001.[2] He has also sent enough money to his family to pay for his children's medical care and educational expenses and to maintain the family home.

After hearing Chen's testimony and considering "a number of corroborating documents verifying his situation," the IJ determined that Chen was credible. App. 21. The IJ also held that the 21,000 RMB fine imposed on Chen's family—which exceeded two years' salary—was a severe economic deprivation giving rise to a presumption of future persecution.[3] In so holding, the IJ expressly rejected the Government's assertion that a person who pays a snakehead $50,000 must be able to afford the lesser fine of 21,000 RMB (or approximately $3,095). The IJ found that Chen's $50,000 loan was an "invest[ment] in his future ... to pay off the debt he owed in his home country where he had over two years of economic wage loss im-

---

1. The parties dispute the timing of these fines. While agreeing that Chen was forced to pay a total of 11,000 RMB prior to leaving the country in 2001, the Government maintains that the additional 9,000 RMB fine was imposed only after his wife sought documentation to support his asylum application. Chen claims that the entire 21,000 RMB fine was assessed in 1996, and that the various payments over the years (including the 9,000 RMB fine) were installments on the single fine.

2. It is not clear whether Chen has repaid the $50,000 loan he borrowed from his family to pay the snakehead.

3. Although the IJ held that it need not reach Chen's claims for withholding of removal or relief under the CAT, it noted that Chen "would have met his burden of proof under these theories as well." App. 26.

pacting him." App. 23–24.[4]

In a decision dated December 9, 2009, the BIA reversed the IJ's grant of asylum and ordered Chen deported. Finding that Chen "was able to pay off the fines with loans from friends and relatives," "obtain the assistance of a smuggler to travel to the United States," and "pay for medical care and the education of his children," the BIA concluded that Chen did not suffer a severe economic deprivation and thus "failed to establish that he suffered … past persecution." App. 10 (citing *Li v. Att'y Gen.,* 400 F.3d 157, 169 (3d Cir.2005) (holding that "a fine of more than a year and a half's salary; blacklisting from any government employment and from most other forms of legitimate employment; the loss of health benefits, school tuition, and food rations; and the confiscation of household furniture and appliances from a relatively poor family constitute deliberate imposition of severe economic disadvantage which could threaten [the] family's freedom if not their lives….")). The BIA also held that Chen "has not demonstrated a reasonable possibility that he will be persecuted for 'other resistance' to the coercive population control rules in China."

Chen filed a timely petition for review.

## II

We have jurisdiction to review the BIA's final order of removal under 8 U.S.C. § 1252(a). *Briseno–Flores v. Att'y Gen.,* 492 F.3d 226, 228 (3d Cir.2007). We review the BIA's findings for substantial evidence and may not disturb them " 'unless any reasonable adjudicator would be compelled to conclude to the contrary.' " *Sandie v. Att'y Gen.,* 562 F.3d 246, 251 (3d Cir.2009) (quoting 8 U.S.C. § 1252(b)(4)(B)). Where the BIA renders its own decision and does not merely adopt the opinion of the IJ, we review the BIA's decision, not that of the IJ. *Gao v. Ashcroft,* 299 F.3d 266, 271 (3d Cir.2002).

Under the Immigration and Nationality Act (INA), an applicant may demonstrate eligibility for asylum by showing either past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A). In *Li v. Att'y Gen.,* 400 F.3d 157 (3d Cir.2005), we held that "the deliberate imposition of severe economic disadvantage which threatens a petitioner's life or freedom may constitute persecution." *Id.* at 168 (adopting the "severe" economic deprivation standard set forth in *Matter of Acosta,* 19 I. & N. Dec. 211 (BIA 1985)).[5]

■ Chen claims the BIA discounted "substantial and highly relevant" evidence in the record that he suffered a "severe" economic deprivation due to his resistance to China's family planning policies. Specifically, he argues that the BIA failed to consider evidence that he was denied government benefits, such as free health care

---

4. The IJ was also unconvinced by the Government's claim that because Chen's family remained in their home, they did not suffer any economic deprivation. The IJ explained that the family's well-being depended entirely on Chen's income in the United States, and again, was not a reflection of Chen's earning capacity in China.

5. Zhen Hua Li was a mechanic who worked in a government-sponsored factory. *Li,* 400 F.3d at 160. Following the birth of his fourth child, Li was effectively blacklisted from all government employment, stripped of the health and educational benefits associated with government work, and fined a total of 1,200 RMB (the equivalent of twenty-months' salary). *Id.* at 169. Chinese authorities also confiscated Li's refrigerator, television, and other household items that Li alleged were "significant objects." *Id.* We stated that while the "issue is close," *id.* at 159, in the aggregate, "the economic restrictions allegedly faced by the Li family were 'severe.' " *Id.* at 169.

and educational services, following the birth of his fourth child. In his testimony before the IJ, however, Chen maintained only that he paid for his children's medical expenses and education himself, App. 235; he did not testify that he did so because the government denied him these services to punish him for his resistance to family planning policies. *Cf. Li,* 400 F.3d at 169 (finding that the loss of the alien's government job in China constituted a loss in "not only income, but also health coverage, food and medicine rations, and educational benefits"). Moreover, while the record reflects that Chen's wife was refused public notary services because of the family's outstanding debts to the state, this deprivation does not constitute a "severe" economic deprivation.

Chen also argues that the BIA failed to consider the IJ's finding that Chen would not have been able to pay off his fines had he not moved to the United States. However, Chen bears the burden of showing that he suffered "persecution in the past," 8 C.F.R. § 208.13, not that he *would have* suffered persecution had circumstances been different. As the BIA explained, the "availability of other sources of income has been a key factor in assessing the impact of economic sanctions." *In re T–Z–,* 24 I. & N. Dec. 163, 174 (B.I.A.2007) (citing *Capric v. Ashcroft,* 355 F.3d 1075, 1092–93 (7th Cir.2004) (finding that an alien's loss of a job and an apartment based on religion and ethnicity did not amount to past persecution where the government had given him eight months to find a new residence, his wife remained employed, and he had not attempted to find other work) and *Khourassany v. INS,* 208 F.3d 1096, 1101 (9th Cir.2000) (finding that the forced closing of an alien's restaurant did not constitute past persecution where he continued to operate other profitable businesses)). Thus, while a fine that "reduce[s] an applicant to an impoverished existence" may give rise to a valid claim

for asylum, a "heavy fine leveled against a wealthy individual" will not qualify as a "severe" economic disadvantage "if the person remains relatively wealthy and experienced no meaningful change in life style or standard of living." *Id.; see Mirisawo v. Holder,* 599 F.3d 391, 397 (4th Cir.2010) (holding that a citizen of Zimbabwe could not claim that the destruction of her home deprived her of a basic necessity of life, because she "never lived in the house and was living and working in the United States as a live-in housekeeper").

■ Here, it is undisputed that Chen was able to earn enough money in the United States to pay off his fines to the Chinese Government. Moreover, the record is clear that Chen and his family continued to receive shelter, food, health care, education, and other basic necessities throughout the relevant time period. Thus, substantial evidence supports the BIA's finding that Chen's family did not suffer a "severe" economic deprivation due to the imposition of the 21,000 RMB fine. *Compare* App. 9 (finding that Chen's "family continued to reside in the same house, and the respondent was able to pay for medical care and the education of his children"), *with Cheng v. Att'y Gen.,* 623 F.3d 175, 194 (3d Cir.2010) (holding that "the seizure of property as significant as the family farm and truck, when those very assets served as the exclusive source of the family's livelihood, constitutes a severe economic sanction").

For the reasons stated, we will affirm the BIA's holding that Chen has not shown that he suffered past economic persecution in his country of origin. Moreover, we agree with the BIA that because Chen has fully repaid the 21,000 RMB fine to the Chinese Government, he no longer has a reasonable fear of economic deprivation due to his unpaid debt to the State. Accordingly, we will deny Chen's petition for review.

POLLAK, District Judge, concurring.

I concur in the court's opinion and judgment. I think it appropriate to add a few words.

After argument I was of the view that the BIA's order denying asylum to Bao Hui Chen was in error and that Chen's petition for review should be granted. The imposition on Chen of fines totaling nearly 21,000 RMB, the equivalent of more than two years' wages, seemed economic deprivation so acute as to constitute economic persecution. I was strengthened in this preliminary view by the fact that the fines imposed on Chen actually exceeded, albeit modestly so, the fines imposed on Zhen Hua Li, whose case this court considered in *Li v. Attorney General*, 400 F.3d 157 (3d Cir.2005). There, this court held that Li's allegations, if established, did constitute economic persecution. But my post-argument assessment has proved inadequate. I am persuaded by this court's opinion that, notwithstanding the similarity in fines, there are decisive differences between Chen's case and Li's case which weigh against Chen's claim. Chen suffered no sanctions additional to the fines. By contrast, (1) Li lost his government job, and was blacklisted from further government employment; (2) Li and his family lost medical and educational benefits; and (3) a number of household furnishings were confiscated from his home. And in Judge Becker's opinion for the court in *Li v. Attorney General*, it was these severe incremental deprivations on top of the fines that were key to this court's conclusion that Li was the subject of economic persecution. *Id.* at 169.

The holding in this case is that the fines imposed on Chen, though "onerous" as the BIA characterized them, were not so severe an economic deprivation as to constitute economic persecution, and, hence, that Chen was not entitled to asylum. I join that holding.

But beyond this court's holding this case entails a cautionary lesson. When Li's case arose, the BIA ruled that Li did not qualify for asylum. This court ruled otherwise. In ruling on the case at bar the BIA found that Chen was not as oppressively disadvantaged as Li, and we today conclude that the BIA adduced substantial evidence in support of that finding. But it would, I think, be a mistake to draw the inference that the quantum of economic deprivation suffered by Li is the minimum standard that must be met by one claiming economic persecution. I would suggest that the BIA and this court must be alert to scenarios involving punishments which, while grave and lasting, may take forms different from those visited on Li, or are only marginally less destabilizing than those suffered by Li. The economic deprivation so daunting as to constitute economic persecution is not a closed category.